UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JANE DOE, a minor child, )
by and through her next friend, )
ANTHONY EDWARD THOMAS, )
 )
    Plaintiffs, )
 )
v. )   Case No. 1:18-cv-00006
 )   Judge Aleta A. Trauger
MAURY COUNTY BOARD OF EDUCATION, )
and TAD ERIC CUMMINS, )
 )
    Defendants. )

## MEMORANDUM

Pending before the court is a Motion for Leave to File First Amended Complaint (Docket No. 26), filed by the plaintiff, Jane Doe by and through her next friend, Anthony Edward Thomas, to which one of the defendants, Maury County Board of Education ("MCBE"), has filed a Response (Docket No. 29). For the reasons discussed herein, Doe's motion will be granted in part.

## BACKGROUND[1]

Doe is a minor child residing in Maury County, Tennessee. Thomas is Doe's father. MCBE is a public school board organized under the laws of Tennessee. Previously homeschooled, Doe and several of her siblings enrolled at Culleoka Unit School ("CUS") in the fall of 2015. Thomas obtained sole legal custody of his children, including Doe, shortly before their enrollment at CUS. The change in custody occurred after serious allegations arose that the children, and in particular Doe, had been physically abused by their mother. MCBE was aware of these allegations and shared them with teachers and administration at CUS.

---

[1] The facts set forth herein are taken from Doe's Complaint (Docket No. 1) and are construed in the light most favorable to Doe.

1

When Doe enrolled, Cummins had taught high school health science at CUS since 2011. He was known as a friendly and informal teacher. Many CUS students sought out Cummins' class, which had little structure. Students regularly used the class as a gathering spot, and Cummins acted as a counselor to some students. Cummins' reputation for informality with students, including the lack of emphasis on academics, was known to CUS administration.

Doe met Cummins in her first semester at CUS. She was fourteen years old at that time. The following semester, she was assigned to his class. Cummins, aware of Doe's background of domestic abuse, counseled her. Doe was again assigned to Cummins' class the following semester. Cummins instructed Doe to sit next to his desk during class. He encouraged Doe to eat her lunch with him in his classroom. Cummins had an open class period during the school day, during which he had Doe visit him. He allowed her to nap on a hospital bed located in his classroom.[2] Doe also regularly left other classes with teacher permission for counseling sessions with Cummins. His and Doe's unique arrangement was generally known to CUS students, teachers and administrators.

At one point during the fall 2016 semester, Cummins told Doe he wanted to see her naked. He invited her into a closet in his classroom, where he touched her inappropriately. By mid-semester, he was regularly kissing and fondling her during school hours. He eventually convinced her to perform oral sex on him, which occurred regularly until mid-January 2017.

Doe confessed to Cummins that she felt depressed and needed professional help, which Cummins dissuaded her from seeking. Meanwhile, the developing relationship between Cummins and Doe was apparent to other CUS students and teachers. Teachers with nearby classrooms noticed the inordinate amount of time Doe spent in Cummins' classroom. One student complained

---

[2] The record does not contain an explanation for why Cummins had a hospital bed in his classroom. The Complaint does indicate, however, that he allowed students other than Doe to also rest on the bed.

to CUS administration and asked to be removed from Cummins' class, due to discomfort with Cummins' and Doe's relationship.

On January 23, 2017, a seventh-grade student witnessed Doe being kissed by Cummins in his classroom. The student was understandably troubled and, accompanied the following day by two other students, confronted Cummins about his relationship with Doe. Cummins claimed that he was a father figure to Doe and considered her a close friend. The student reported the incident to CUS administration. CUS initiated an investigation. Neither of Doe's parents nor law enforcement were informed of the kissing incident or subsequent investigation. Doe was not removed from Cummins' class during the investigation. No students with knowledge of Cummins' and Doe's unique relationship were interviewed.

Despite the ongoing investigation, on January 27, 2017, Cummins chaperoned a field trip facilitated by the school and attended by Doe. During the field trip, Cummins propositioned Doe for sex and she refused, afraid of being discovered by other students. Days after the field trip, CUS Principal Penny Love issued a directive to both Cummins and Doe that they have no contact with one another. As word of the kissing incident spread, Doe endured ridicule from students and teachers, many of whom saw Cummins as a victim. Some CUS employees thought Cummins had been falsely accused or that Doe had instigated the incident and, therefore, was at fault.

On January 30, 2017, Maury County Schools completed its investigation and found that it could not confirm that the kissing incident occurred. The investigation report recommended that Doe be removed from Cummins' classroom. It further recommended that Doe be instructed to seek guidance from school administrators for any anxiety issues she was having. Cummins was to be reprimanded, and his classroom was to be monitored to ensure he was not hosting students outside of class.

Thomas learned of the kissing incident the following day from an investigator with the Maury County Sheriff's Department. On February 1, 2017, Thomas contacted CUS to seek information and express his extreme concern. On February 3, 2017, Principal Love issued two reprimands to Cummins: one for non-professional conduct in allowing a student to spend an excessive amount of time in his classroom, and another for insubordination in allowing Doe in his classroom contrary to Principal Love's directive. Unsatisfied by CUS's response, Thomas hired a lawyer. On February 6, 2017, Thomas's counsel sent a letter to MCBE, demanding that further action be taken to protect Doe from Cummins. That same day, MCBE suspended Cummins pending a second investigation.

Despite his suspension, Cummins continued to speak with Doe on the phone and by text message. Some students and teachers blamed Doe for Cummins' suspension, resulting in more ridicule levied at Doe. MCBE issued a directive to CUS faculty that there be no discussion about the kissing incident. Citing this directive, some CUS teachers refused to speak with or counsel Doe in response to the ridicule she received. Doe became isolated and felt unwelcome at CUS. She sought comfort from Cummins. The two continued to communicate and have contact over the following weeks and, on March 13, 2017, they absconded. Their whereabouts remained unknown for weeks, sparking an Amber Alert and a nationwide manhunt. On April 20, 2017, Doe was found with Cummins in California.

On January 19, 2018, Doe brought suit against MCBE for violations of 20 U.S.C. § 1681, *et seq.* (Title IX), and against Cummins under 42 U.S.C. § 1983. On September 18, 2018, Doe filed a motion for leave to file an amended complaint. She seeks to add a claim against MCBE under § 1983 based on MCBE's failure to prevent Cummins' actions. The proposed new claim reads as follows:

COUNT 2A

Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983 (Defendant MCBE)

118a. Plaintiff incorporates all preceding paragraphs into this count by reference as if fully restated herein.

118b. MCBE had a duty to maintain and enforce written policies and/or rules and/or guidelines prohibiting sexual harassment of students by teachers, faculty and staff and failed to do so.

118c. Defendant MCBE had a duty to supervise and/or train its employees, administrators, faculty, staff, volunteers and other agents regarding how to identify, investigate, and to respond to student sexual harassment and/or abuse by faculty and/or staff members and failed to do so.

118d. Defendant MCBE's failure to enact proper supervision and training in effect acted as a policy, custom and/or practice of inadequate supervision and/or training.

118e. Defendant MCBE's absence of policies and/or failure to train its employees and staff is causally related to and caused the harassment and sexual abuse suffered by [Doe], which violated her constitutional right to bodily integrity and her property right of education.

118f. Defendant MCBE had actual notice and knowledge of the dangers of sexual harassment and assault faced by its students, and took no meaningful remedial or disciplinary action and chose not to fully investigate or supervise the actions of Tad Cummins, and allowed the harassment and sexual abuse of [Doe] to occur.

118g. As a direct and natural consequence of MCBE's action, inaction and deliberate indifference and the violation of her constitutional rights, [Doe] suffered and continues to suffer, including but not limited to, physical injuries, emotional distress, psychological trauma and the denial of educational opportunities and benefits.

118h. As a direct and proximate result of Defendant MCBE's action, inaction and deliberate indifference in violation of her constitutional rights, [Doe] sustained and continues to sustain injuries for which she is entitled to be compensated.

(Docket No. 26-1.) In addition, Doe seeks to make a stylistic amendment for continuity purposes, replacing all references to MCBE in her Complaint—such as "the Board" or "Maury County Schools" —with the acronym "MCBE."

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id.* "Furthermore, the thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (internal quotation marks omitted).

The district court has broad discretion to determine "when justice so requires." *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). A motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion does not serve the interests of justice.

## ANALYSIS

MCBE argues that the court should deny Doe's motion to amend because her proposed § 1983 claim against it could not survive a motion to dismiss. A § 1983 municipal liability claim against a school board is examined with a two-pronged inquiry: (1) whether the plaintiff has asserted the deprivation of a constitutional right, and; (2) whether the school board is responsible for that violation. *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). The Due Process Clause of the Fourteenth Amendment protects a student's right not to be sexually abused by a public school teacher. *Id.* at 506 ("[A] schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee."). Doe has properly asserted a deprivation by Cummins of that right and thus satisfies the inquiry's first prong. But a school board cannot be held liable under § 1983 on a *respondeat superior* theory of liability. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). Instead, a school board may only be found liable when its policy or custom causes the injury alleged. *See Los Angeles County v. Humphries*, 562 U.S. 29, 37-39 (2010); *Monell*, 436 U.S. at 690 (holding that municipality is liable under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Doe alleges that the following MCBE policies or customs caused her abuse: failure to train, failure to supervise, failure to implement preventative policies, and failure to take adequate remedial or disciplinary measures. Because Doe's theory of liability is one of inaction, she must establish:

(1) the existence of a clear and persistent pattern of sexual abuse by school employees;

(2) notice or constructive notice on the part of the MCBE;

7

(3) MCBE's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that MCBE's custom was the "moving force" or direct causal link in the constitutional deprivation.

*See Claiborne County*, 103 F.3d at 507 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). To satisfy these four prongs, Doe must plead facts showing that MCBE's alleged decision not to act amounts to a "policy" of deliberate indifference to her constitutional rights. *See id*. "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Id*.

Doe cannot establish municipal liability against MCBE for failure to implement preventative policies or take adequate remedial action because she fails to satisfy the first prong of the *Claiborne County* test. She does not plead facts supporting a "clear and persistent pattern of sexual abuse by school employees." *See id.* Doe does not allege that Cummins abused any other students. "A plaintiff cannot succeed on a § 1983 claim against a municipality based solely on her own abuse." *Campbell v. Dundee Cmty. Sch*., No. 12-CV-12327, 2015 WL 4040743, at *9 (E.D. Mich. July 1, 2015) ("First, plaintiffs have not shown a clear and persistent pattern of sexual abuse by school employees. They have shown that one employee abused one student, and when he was discovered, he was terminated from his employment and prosecuted."), *aff'd*, 661 F. App'x 884 (6th Cir. 2016); *see Swanson v. Livingston County*, 121 F. App'x. 80, 85 (6th Cir. 2005) ("Nor has Swanson identified a single incident of alleged harassment against any individual but herself."); *Doe v. Springfield-Clark Career Tech. Ctr.*, No. 3:14-CV-00046, 2015 WL 5729327, at *19 (S.D. Ohio Sept. 30, 2015) (finding no § 1983 liability for school board where a teacher's misconduct with regard to one student constituted "isolated incidents as opposed to ongoing issues."); *see also A.W. v. Humble Indep. Sch. Dist*., 25 F. Supp. 3d 973, 1001 (S.D. Tex. 2014)

("Acts of sexual harassment by a teacher directed solely at a single student do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter."), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015). Doe's allegations are distinguishable from those where courts have found a clear and persistent pattern based on years of abuse against multiple students. *See Doe v. Warren Consol. Schs.*, 307 F. Supp. 2d 860, 887 (E.D. Mich. 2003) (allowing § 1983 claim to go forward on summary judgment where the teacher's misconduct "continued on a consistent basis" from 1984 to 1998); *Hart v. Paint Valley Local Sch. Dist.*, 2002 WL 31951264 at *9 (same, where the teacher had previously faced allegations of sexual abuse in 1976 and 1990); *Massey v. Akron City Bd. of Educ.*, 82 F. Supp. 2d 735, 738 (same, where the plaintiff showed "a long history of [the teacher's] conduct suggestive of pedophilia towards boys and young men."). Doe's allegations of Cummins' behavior, while horrific, are isolated to the limited confines of his relationship with her.

Nor does Doe plead that MCBE ignored evidence of sexual abuse committed by other teachers. The Sixth Circuit's decision in *Doe v. Claiborne County* is instructive. In that case, the plaintiff was sexually harassed and repeatedly statutorily raped over the course of many months by a middle school gym teacher. At his previous job, the teacher was investigated by the Department of Human Services ("DHS") for the sexual abuse of nine girls; DHS determined that four of the nine allegations were "founded." 103 F.3d at 502. The teacher ultimately reached a settlement with DHS providing that the agency would not pursue criminal charges, "but that it would notify the appropriate school boards so that any further course of action would be up to them." *Id*. After the teacher was hired by the defendant, a school board member heard rumors that he was behaving inappropriately with female students, and one student complained to a guidance counselor that the teacher had sexually harassed her. *Id*. at 503. The superintendent and

9

various school board members knew of these facts. Nevertheless, the school district was not liable under § 1983 for the teacher's abuse of the plaintiff. *Id*. at 509. In a later case, the Sixth Circuit summarized its *Claiborne County* holding:

> [E]ven where a school board had some information that one of its teachers may have sexually abused students in the past and the board failed to remove him before he abused the plaintiff, the school board could not be found liable for having a policy, custom, or practice of condoning such abuse **because there was no evidence that the school board failed to act regarding other teachers in similar circumstances; thus there was no evidence of any deliberate pattern**. [*Claiborne County*] makes clear that the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference.

*Thomas*, 398 F.3d at 433 (citations omitted) (emphasis added). Here, Doe has presented no evidence that other MCBE teachers engaged in sexual misconduct toward students.

Doe's failure to train and supervise claims suffer from the same defect. "To succeed on a failure to train or supervise claim, the plaintiff must prove . . . [that] the inadequacy was the result of the municipality's deliberate indifference . . . ." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) ("Nor has he alleged that other Stites & Harbison employees who served as mediators have engaged in prior instances of unconstitutional conduct such that Stites & Harbison could be deemed to have demonstrated deliberate indifference to the inadequacy of its employees' training.") (quoting *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010); *see also Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) ("In addition, Fisher has not shown that the County knew of prior

unconstitutional actions by its employees and failed to respond. Accordingly, the district court did not err in granting summary judgment for Harden on the failure to train and supervise claim.").

Because Doe cannot point to a history of sexual abuse by Cummins or other MCBE employees, she fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Doe does not state a plausible § 1983 claim for relief against MCBE, and thus her complaint as amended could not survive a motion to dismiss. Amendment would therefore be improper under Rule 15 with regard her proposed § 1983 claim.

Doe also proposes stylistic amendments intended to improve continuity throughout her complaint. These amendments are sought in good faith, constitute Doe's first attempt at amendment, and would not prejudice MCBE in any way. Doe is thus free under Rule 15's liberal standard to make these changes as she sees fit.

## **CONCLUSION**

For the foregoing reasons, Doe's Motion to Amend is hereby **GRANTED** in part.

An appropriate order will enter.

ENTER this 30th day of October 2018.

 _____
 ALETA A. TRAUGER
 United States District Judge